## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **BUSINESS & ESTATE ADVISERS,** | ) | |
| **INC., PSP, E. DENNIS ZAHRBOCK** | ) | |
| **TRUSTEE** | ) | |
| **282 East Wayzata Blvd.** | ) | **CASE NO.** |
| **Wayzata, MN 55391** | ) | |
| | ) | |
| **JOHN A. ANDERSON, Jr.** | ) | **JUDGE** |
| **7501 Auto Club Road** | ) | |
| **Bloomington, MN 55438** | ) | |
| | ) | |
| **JODENE I. ANDERSON** | ) | |
| **7501 Auto Club Road** | ) | |
| **Bloomington, MN 55438** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **COMPLAINT** |
| **vs.** | ) | |
| | ) | |
| **JOHN W. LAWTON** | ) | |
| **294 East Grove Lane #200M** | ) | |
| **Wayzata, MN 55391** | ) | |
| **INDIVIDUALLY AND AS** | ) | |
| **CONTROLLING PERSON TO** | ) | |
| **PARAMOUNT PARTNERS, L.P.** | ) | **JURY DEMAND ENDORSED** |
| **f/k/a CROSSFIRE TRADING** | ) | **HEREIN** |
| **FUND, L.P.** | ) | |
| | ) | |
| **CROSSROAD CAPITAL** | ) | |
| **MANAGEMENT, LLC,** | ) | |
| **INDIVIDUALLY AND AS** | ) | |
| **GENERAL PARTNER TO** | ) | |
| **PARAMOUNT PARTNERS, L.P.** | ) | |
| **f/k/a CROSSFIRE TRADING** | ) | |
| **FUND, L.P.** | ) | |
| **294 East Grove Lane #200M** | ) | |
| **Wayzata, MN 55391** | ) | |
| | ) | |

**PARAMOUNT PARTNERS, L.P.**    )
**f/k/a CROSSFIRE TRADING**    )
**FUND, L.P.**    )
**294 East Grove Lane #200M**    )
**Wayzata, MN 55391**    )
    )
**JOHN and JANE DOES, 1-10**    )
**Unknown addresses**    )
    )
    **Defendants.**    )

Plaintiffs Business & Estate Advisers, Inc., PSP ("BEA"), E. Dennis Zahrbock, Trustee ("Zahrbock"), John A. Anderson, Jr. and Jodene I. Anderson (collectively the "Andersons") (all plaintiffs together "Plaintiffs") submit the following *Complaint for Temporary Restraining Order, Preliminary Injunction, and Money Damages* against Defendants John W. Lawton, Crossroad Capital Management, LLC, individually and as General Partners of Crossfire Trading Fund, L.P., and Paramount Partners, L.P. f/k/a Crossfire Trading Fund, L.P. and certain persons, whose identities are presently unknown, but listed as John and Jane Does 1-10 (collectively "Defendants"), and state as follows:

## <u>Jurisdiction and Venue</u>

1.    Jurisdiction of this Court is invoked pursuant to Section 22(a) to the Securities of 1933, as amended ("Securities Act"), Section 27 of the Securities Exchange Act of 1934, as amended ("Exchange Act"), and the doctrine of pendent jurisdiction.

2.    Venue is proper in this district as all Plaintiffs and, based on information and belief, all Defendants reside in this district. Defendants conduct business in this district and certain actions underlying this Complaint took place in this district.

3.    Venue is further proper before this Court because the Subscription Agreement, which Plaintiffs and Defendants are parties to, requires litigation of this matter in any state or federal court located in Minneapolis, Minnesota.

## Parties

4.    Business and Estate Advisers, Inc., PSP, E. Dennis Zahrbock, Trustee is a pension plan for Business and Estate Advisors, Inc. that purchased an interest in the Paramount L.P.

5.    John A. Anderson, Jr., ("John Anderson") is an individual married to Jodene I. Anderson, ("Jodene Anderson") who purchased an interest in Paramount Partners L.P.

6.    Jodene Anderson is an individual married to John Anderson who purchased an interest in Paramount Partners L.P.

7.    Paramount Partners L.P. f/k/a Crossfire Trading Fund L.P. ("Paramount L.P.") is organized as a Limited Partnership under the laws of Delaware. Paramount L.P. conducts and is licensed to do business in Minnesota.

8.    Crossroad Capital Management, LLC ("Crossroad Capital") is a limited liability company under the laws of Delaware. Crossroad Capital conducts and is licensed to do business in Minnesota. Crossroad Capital is a general partner and investment manager for Defendant Paramount L.P.

9.    John W. Lawton ("Lawton") is an individual who upon information and belief owned 50% of Crossroad Capital until April 30, 2003. Upon information and belief, after this date, Lawton became the 100% owner of Crossroad Capital. Upon information and belief, Lawton manages Crossroad Capital. Upon information and belief, Lawton manages Paramount L.P. A copy of a letter detailing Crossroad Capital's ownership change is attached as Exhibit 1.

10.   Upon information and belief, John and Jane Does 1 and 2, are individuals who are or were limited partners of Paramount L.P. who received an approximate distribution of $250,000.00, from Paramount L.P. during 2006.

## Factual Allegations

11.   According to the offering documents, Paramount L.P. is a limited partnership designed to maximize Paramount L.P.'s total return through employment of an active trading strategy based on technical and fundamental analysis of individual securities and markets. According to

the offering documents, Paramount L.P. will normally retain a substantial portion of its portfolio in cash at the end of each trading day.

12. In or about February 2003, John Anderson met Lawton.

13. Lawton discussed various investment opportunities with John Anderson. These discussions included investments in Paramount L.P., and the strategies and trading plans for Paramount, L.P.

14. After expressing interest in the possibility of investing in Paramount L.P., John Anderson received the Crossfire Trading Fund, L.P. Subscription Agreement ("Crossfire Subscription Agreement"), Crossfire Trading Fund, L.P. Confidential Private Placement Memorandum ("Crossfire Memorandum"), and the Crossfire Trading Fund, L.P. Limited Partnership Agreement ("Crossfire Partnership Agreement"). Copies of these documents are attached as Exhibits 2, 3, and 4.

15. Article IV, Page 8, of the Crossfire Subscription Agreement (Exhibit 2) in pertinent part states:

> **4.2   Governing Law; Consent to Jurisdiction.** **This Agreement shall be governed by and construed in accordance with the internal laws (and not the law of conflicts) of the State of Delaware. The parties hereby consent to the non-exclusive jurisdiction of any federal or state court located in Minneapolis, Minnesota for any action arising out of this Agreement.** (emphasis in original)

16. The "Withdrawals" section, on page 6, of the Crossfire Memorandum (Exhibit 3) in pertinent part states:

> Limited Partners generally may make withdrawals from their Capital Accounts on an annual basis (as of the last business day of each calendar year) upon providing the General Partner with at least 60 days' prior written notice.

17. The "Payment of Withdrawal Proceeds" section, on page 7, of the Crossfire Memorandum (Exhibit 3) states:

> In general, your withdrawal proceeds will be paid to you within 45 days after the effective date of your withdrawal.

18.     The "Reports to Partners" section, on page 7, of the Crossfire Memorandum (Exhibit 3) states:

> The General Partner will provide each Limited Partner with monthly financial statements and performance information of the Fund and its operations. Additionally,…the General Partner will provide each Limited Partner with audited annual financial statements of the fund as soon as practicable following the date they become available.

19.     The "Accounting and Reporting" section, on page 8, of the Crossfire Memorandum (Exhibit 3) states:

> Lurie Besikof Lapidus & Company, LLP,…has been selected…as the Fund's independent certified public accounting firm…Copies of their reports will be distributed to all Limited Partners together with a report of the Fund's operating and portfolio holdings.

20.     Page 10 of the Crossfire Memorandum (Exhibit 3) sets forth Crossfire's "Investment Objective and Strategies -- Principle Objective and Trading Strategy," and in pertinent part states:

> The Partnership will seek to maximize the Fund's total return through employment of an active trading strategy that is based on technical and fundamental analysis of individual securities and markets.   In pursing this objective, the General Partner will take long and short positions in securities based upon what it believes are relatively predictable patterns in investor behavior as well as fundamental analysis of securities.   However, to hedge against unknown market risk, the General Partner will normally retain a substantial portion of the Fund's portfolio in cash at the end of each trading day.   This strategy seeks to takes[sic] advantage of daily market fluctuations in equity prices, while minimizing exposure to the overall market.

21. Page 10 of the Crossfire Memorandum (Exhibit 3) sets forth Crossfire's "Investment Objective and Strategies – Trading Strategy," and in pertinent part states:

> The Fund's trading strategy involves the regular transmission of intra-day orders to effect both purchase and sale transactions in the same security or securities.

22. Page 11 of the Crossfire Memorandum (Exhibit 3) sets forth Crossfire's "Investment Objective and Strategies – Portfolio Turnover," and in pertinent part states:

> The Fund will employ an active trading strategy intended to take advantage of short-term market inefficiencies…This strategy will result in extremely high portfolio turnover within the Fund…

23. Article 8, pages 9-10, section 8.4 "Permitted Withdrawals", of the Crossfire Partnership Agreement (Exhibit 4) in pertinent part states:

> 8.4(a) Any Limited Partner desiring to make a withdrawal from its Capital Account shall, no less than 60 days before the date on which such withdrawal is to be made, give written notice to the Partnership…

> 8.4(c) [W]ithdrawal proceeds shall be sent to the applicable Limited Partner within 45 business days following the effective date of such withdrawal.

> 8.4(g) If the General Partner determines that a portion, but not all, of the currently pending withdrawal requests can be processed in due course without adversely affecting the remaining Partners, the requests of all Limited Partners submitting timely withdrawal request with respect to the Fiscal Period end in question shall be satisfied *pro rata* (based on the amounts requested to be withdrawn).  (emphasis in original)

24. Article 12, pages 12-13, "Financial Accounting Reports, Meetings and Voting", of the Crossfire Partnership Agreement (Exhibit 4) in pertinent part states:

12.1   The Partnership may periodically or from time to time, but shall not be required hereunder to, engage at the partnership's expense a certified public accounting firm to perform an audit of the Partnership's financial statements and accounts.

12.3   The General Partner shall send to the Limited Partners, on or before March 15 of each year, unaudited financial statements for the twelve month period ending on December 31 of the prior year… In addition, the General Partner shall send to the Limited Partners, within 45 days after the end of each interim fiscal quarter, unaudited financial information relating to the Partnership and its investments.

25.   The Andersons issued a check for $100,000.00 to Paramount L.P. dated March 13, 2003.  A copy of this check is attached as Exhibit 5.

26.   Lawton discussed various investment opportunities with Zahrbock, Trustee of BEA.  These discussions included investments in Paramount L.P., and its strategies and trading plans.

27.   After expressing interest in the possibility of investing in Paramount L.P., Zahrbock received the Crossfire Subscription Agreement, the Crossfire Memorandum, and the Crossfire Partnership Agreement.

28.   The documents described in paragraph 27 above do not materially differ from Exhibits 2, 3, and 4, and the pertinent portions of these exhibits as discussed in the preceding paragraphs 15 through 24 are incorporated as if fully restated herein.

29.   BEA wire transferred $100,000.00 to Paramount L.P. on April 24, 2003. Portions of the account statement demonstrating this wire transfer are attached as Exhibit 6.

30.   Since the time of Plaintiffs' investments in Paramount L.P., Defendants have failed to provide proper partnership accounting to limited partners, including Plaintiffs.  These failures include, but are not limited to, audited or unaudited annual financial statements, of the partnership investments, portfolio, and financial health to the limited partners, including Plaintiffs.

31.     Since investing in Paramount L.P., Defendants failed to provide proper accounting of the fees Crossroad Capital charged and when those fees where charged to the partnership or the limited partners.

32.     Since investing in Paramount L.P., Defendants failed to provide Plaintiffs with proper monthly, quarterly, and annual statements of their individual limited interests.  Defendants have also failed to provide Plaintiffs with statements indicating the partnerships assets and liabilities.  Copies of the Andersons' December 2003 and December 2004 account statements and the 2004 first and third quarter statements are collectively attached as Exhibit 7.

33.     The financial statements Plaintiffs did receive from Defendants indicated substantial overall gains.

34.     The Andersons' December 31, 2005 monthly statement indicated their account was worth $176,641.62.  A copy of the monthly statement is attached as Exhibit 8.

35.     BEA's December 31, 2005, monthly statement indicated its account was worth $156,426.22.  A copy of the monthly statement is attached as Exhibit 9.

36.     As evidence of their profits, Plaintiffs received K-1 statements from Paramount L.P. for the 2003, 2004, and 2005 tax years.  A copy of BEA's 2005 K-1 statement is attached as Exhibit 10.

37.     Upon information and belief, Defendants invested a portion of Paramount L.P.'s portfolio into illiquid, private offerings, with the intention of holding such securities as long-term investments.

38.     Investing Paramount L.P.'s funds into an illiquid, long-term private offering of securities, was outside of the objectives in the Crossfire Memorandum and contrary to the representations made in connection with the sale of interests in Paramount L.P.

39.     Upon information and belief, some or all of the monthly and/or quarterly account statements received by Plaintiffs were false because these statements indicated gains, when no such gains occurred.  The falsity of the statements is established by Defendants own conduct of tendering "bounced checks," as described below.

40.     Defendants' issuance of false monthly and/or quarterly account statements to Plaintiffs was intended to induce them to stay in the partnership longer than they would have if Plaintiffs had known the true financial condition of Paramount L.P.

41.     Defendants' failure to issue Paramount L.P. annual financial statements was designed to hide Paramount L.P.'s true financial condition from Plaintiffs and to induce them to stay in the partnership longer than they would have if Plaintiffs had known the true financial condition of Paramount L.P.

42.     Defendants' failure to issue Paramount L.P.'s annual financial statements to Plaintiffs was in violation of the Crossfire Memorandum and/or the Crossfire Partnership Agreement.

43.     On October 6, 2005, BEA sent written notice to Crossroad Capital, of its intent to each make a 100% withdrawal from their account ("Liquidation Proceeds"), and to cease to be Paramount L.P. limited partners.  Lawton acknowledged receipt of this letter by signing it.  A copy of this notice is attached as Exhibit 11.

44.     On November 1, 2005, the Andersons sent written notice to Crossroad Capital, of their intent to each make a 100% withdrawal from their account ("Liquidation Proceeds"), and to cease to be Paramount L.P. limited partners.  Lawton acknowledged receipt of this letter by signing it.  A copy of this notice is attached as Exhibit 12.

45.     The notices described in paragraphs 43 and 44 were in full compliance with the terms of the Crossfire Memorandum and/or the Crossfire Partnership Agreement.

46.     Lawton acknowledged Plaintiffs' partnership withdraw request and informed Plaintiffs that they would receive their Liquidation Proceeds by mid-February 2006.

47.     Pursuant to the terms of the Crossfire Memorandum and the Crossfire Partnership Agreement, Plaintiffs were to receive their Liquidation Proceeds no later than forty-five business days after year-end (December 31, 2005), which was on or about Wednesday, March 8, 2006.

48.     Plaintiffs did not receive their Liquidation Proceeds by March 8, 2006.

49. After Defendants failed to provide Plaintiffs their Liquidation Proceeds, Plaintiffs asked Lawton when they would receive their Liquidation Proceeds. Lawton told them that there was a hold up because of Paramount L.P.'s auditing firm. Crossroad Capital and Lawton had not previously disclosed any reason that the timing of the distribution of Liquidation Proceeds would be any different from that required under the Crossfire Partnership Agreement. Crossroad Capital and Lawton, as its controlling person, owed to the Plaintiffs duties of care and candor, as well as good faith and fair dealing. In addition, as these statements were made in connection with the liquidation of securities, (i.e. a sale by the Plaintiffs back to Paramount L.P.) Lawton owed a duty of full, fair, and adequate disclosure under the state and federal securities laws.

50. Lawton further advised Plaintiffs to expect to receive their Liquidation Proceeds in late March 2006 or in early April 2006.

51. March 2006 passed and Plaintiffs did not receive their Liquidation Proceeds.

52. After Defendants' continued failure to provide Plaintiffs their Liquidation Proceeds, Plaintiffs again asked when they would receive their Liquidation Proceeds. Lawton told them that there were additional unexpected delays.

53. Lawton explained that the audit concluded in May 2006 and checks were then issued to each Plaintiff representing their Liquidation Proceeds.

54. Lawton requested that Plaintiffs not attempt to cash or deposit their checks until ten days after receiving them.

55. BEA received a check for $138,357.00 dated June 10, 2006. BEA deposited the check into its account after ten days.

56. The Andersons received a check for $156,007.00 dated June 10, 2006. The Andersons deposited the check in their account after ten (10) days.

57. Pursuant to the Crossfire Memorandum and/or Crossfire Partnership Agreement, Plaintiffs' limited partnerships interests were to have ceased by 01/01/06 and their partnership distributions should have been based on the amount indicated on their December 31, 2005 individual account statements.

58.   The actual distributions to each Plaintiff (as shown above in paragraphs 55 and 56) were significantly less than the amounts indicated on their respective December 31, 2005 account statements.  (See paragraphs 34 and 35.)

59.   By June 30, 2006, Plaintiffs had all received notice that their checks from Paramount L.P. had "bounced", because the account they were drawn from did not contain sufficient funds.  Copies of these bounced checks, or bank statements indicating the same, are attached as Exhibits 13 and 14.

60.   After receiving notice that their Paramount L.P. checks "bounced", Plaintiffs inquired as to why the checks "bounced" and made written and oral demands to Defendants to make sufficient funds available for payment of their checks.

61.   Defendants failed to provide any explanation as to why the checks "bounced" and further have refused to provide funds to Paramount L.P.'s checking account(s) to make Plaintiffs checks "good" and payable.

62.   On September 20, 2006, Plaintiffs sent Defendants a Demand for payment of their worthless checks letter, this letter is in full compliance with Minn. Stat. §§ 604.113 and 609.535.  A copy of this letter is attached as Exhibit 15.

63.   After having their Paramount L.P. checks "bounce" and Defendants not having remedied the situation, Plaintiffs have the rights of creditors to Paramount L.P.  Further, Defendants have violated their duties regarding Plaintiffs' withdrawal from a limited partnership, breached the Crossfire Partnership Agreement, and violated state and federal securities laws.  In light of this conduct, Plaintiffs retain all their rights as limited partners to the extent necessary to enable them to have their withdrawal requests honored, and enforce their rights under law.  See DE § 17-606(a).

64.   Upon information and belief, at least two other Paramount L.P. limited partners (John and Jane Does number 1 and 2), their identities being currently unknown, received approximately $250,000.00 in withdrawals during the spring or summer of 2006, from one or more of the Defendants.

65.   John and Jane Does 1 and 2's receipt of Paramount L.P.'s funds, without Plaintiffs receiving their funds, or at least a pro rata share of all funds distributed to John and Jane Does 1 and 2, is in violation of the Crossfire Partnership Agreement.

66.   To date, Defendants have failed to provide Plaintiffs with their Liquidation Proceeds.   This violates DE § 17-604, the Crossfire Memorandum, and the Crossfire Partnership Agreement.

67.   To date, Defendants have refused and/or otherwise failed to provide the proper accounting and/or financial statements in response to Plaintiffs request for same, even though such requests are numerous and have been made repeatedly, in detail, and through counsel.  Defendants also failed to provide Plaintiffs the information for which the Limited Partners are entitled under Delaware Law.  See DE § 17-305.

68.   To date, Defendants have refused and/or otherwise failed to satisfy Plaintiffs' numerous written and oral withdrawal requests, including requests through counsel.

69.   Defendants' refusal and/or inability to provide a proper accounting and/or financial statements continues to this date.  On information and belief, such refusals to provide information are the continuance of the series of acts, practices, and/or omissions intended to hide, deceive, mislead, misdirect, and misrepresent the true financial condition of Paramount L.P.

70.   Defendants' refusal and/or inability to provide the funds to satisfy their obligations to Plaintiffs continue to this date.

### **Count 1**
### **Breach of Contract**
### **(All Defendants Except Jane and John Does)**

71.   Plaintiffs incorporate paragraphs 1 through 70 of the Complaint, as if fully rewritten herein.

72.   Defendants created the Crossfire Memorandum and the representations therein and were parties to the Crossfire Partnership Agreement.

73.   Defendants' conduct, acts, and omissions to act were contrary to operation of the partnership as disclosed in the Crossfire Memorandum, including, but not limited to:

(a) The "Withdrawals" section;

(b) The "Payment of Withdrawal Proceeds" section;

(c) The "Reports to Partners" section;

(d) The "Accounting and Reporting" section;

(e) The "Investment Objective and Strategies – Principle Objective and Trading Strategy" section;

(f) The "Investment Objective and Strategies – Trading Strategies" section; and

(g) The "Investment Objective and Strategies – Portfolio Turnover section.

With respect to the Crossfire Partnership Agreement, Defendants conduct breached such Agreement including, but not limited to the following:

(a) Section 8.2;

(b) Section 8.4(a), (c), and (g);

(c) Section 12.1;

(d) Section 12.3; and

(e) Section 12.4.

74.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs are damaged and continue to be damaged in excess of $333,000.00.

## Count 2
## Breach of Covenant of Good Faith and Fair Dealing
## (All Defendants Except John and Jane Does)

75.     Plaintiffs incorporate paragraphs 1 through 74 of the Complaint, as if fully rewritten herein.

76.     Defendants have a common law duty to act in good faith and fair dealing regarding their written agreements with Plaintiffs.

77.     Defendants violated their common law duty regarding their written agreements.

78.     Defendants continue to violate their common law duty regarding their written agreements.

79.  As a direct and proximate result of Defendants' breaches of their covenant of good faith and fair dealing, Plaintiffs are damaged and continue to be damaged in excess of $333,000.00.


**Count 3**
**Breach of Fiduciary Duty**
**(All Defendants Except John and Jane Does)**

80.  Plaintiffs incorporate paragraphs 1 through 79 of the Complaint, as if fully rewritten herein.

81.  As a General Partner, Crossroad Capital and all of its owners, managers, members, and officers, including Lawton, owed fiduciary duties to Paramount L.P. and its limited partners, including Plaintiffs.  Paramount L.P. as an entity holding and investing funds on behalf of its limited partners owed fiduciary duties to the limited partners, including Plaintiffs.

82.  Paramount L.P., Crossroad Capital, and Lawton, breached their fiduciary duties, by among other things:

(a) failing to provide proper individual and partnership accounting to the limited partners;

(b) failing to provide accurate individual monthly and/or quarterly account statements;

(c) delivering insufficient fund checks and failing to make such checks "good" and payable;

(d) making fraudulent conveyances to and paying other partners in advance of and in preference to Plaintiffs;

(e) failing to provide adequate or accurate financial information regarding Plaintiffs' individual accounts as well as the partnership's financial statements including its investments; and

(f) making deliberate and repeated false statements to Plaintiffs that their checks were "good" or would soon be made "good" while knowing that Paramount Partners, L.P. would not and/or could not make such checks "good".

83.  Paramount L.P., Crossroad Capital, and Lawton continue to breach their fiduciary duties.

84.    As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiffs are damaged and continue to be damaged in excess of $333,000.00.

**Count 4**
**Unjust Enrichment**
**(All Defendants except John and Jane Does 3-10)**

85.    Plaintiffs incorporate paragraphs 1 through 84 of the Complaint, as if fully rewritten herein.

86.    Plaintiffs each paid $100,000.00 to Paramount L.P. to purchase an interest in the limited partnership.

87.    Plaintiffs each received monthly account statements indicating overall gains for their individual partnership interests.

88.    Plaintiffs all requested to withdraw as Paramount L.P. limited partners and to receive their share of the partnership assets.

89.    The checks Plaintiffs received purporting to represent their share of the partnership proceeds "bounced" for non-sufficient funds.

90.    Defendants have unjustly enriched themselves at the expense of Plaintiffs.

91.    Upon information and belief, Defendants have and continue to misappropriate Paramount L.P.'s assets.   Plaintiffs now have an equitable interest in these assets.

92.    During the pendency of this lawsuit, Plaintiffs are entitled to have the status quo maintained regarding Paramount L.P.'s assets.

93.    Plaintiffs have an equitable interest in the assets of Paramount L.P. of approximately $294,364.00.

94.    Under law and in equity Plaintiffs are damaged and entitled to protection from further erosion of Paramount L.P.'s partnership assets.

95.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs are entitled to equitable relief in the form of an asset freeze of $294,364.00.  Further, Plaintiffs are entitled to have a constructive trust set up for their benefit to hold these frozen assets.

96. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs are damaged and continue to be damaged in excess of $333,067.84.

### Count 5
### Common Law Fraud – The Crossfire Memorandum is False and Materially Misleading
### (All Defendants Except John and Jane Does)

97. Plaintiffs incorporate paragraphs 1 through 96 of the Complaint, as if fully rewritten herein.

98. Defendants issued the Crossfire Memorandum in a private securities offering.  The Crossfire Memorandum details the type of business Paramount L.P. was to conduct and how the partnership would be managed.

99. The statements in the Crossfire Memorandum are material representations made by Defendants, which were intended to induce persons, including Plaintiffs, to justifiably rely on those representations.

100. Portions of the Crossfire Memorandum are false and/or materially misleading.  These false, materially misleading statements and misrepresentations include, but are not limited to:

   (a) that Paramount L.P.'s business was to engage in active stock market trading based primarily on technical analysis;
   (b) that Paramount L.P. would keep a significant portion of its portfolio in cash at the end of each trading day;
   (c) that Paramount L.P. would provide monthly account statements; and
   (d) that Paramount L.P. would provide audited and/or unaudited annual partnership financial statements including disclosure of investments

101. Plaintiffs justifiably relied upon the material representations in the Crossfire Memorandum.  Plaintiffs' justifiable reliance has proximately caused their damages.

102. The material representations were false and/or made false by Defendants' subsequent actions, actions that have violated many representations including those in paragraph 109.

103. Defendants' acts constitute fraud under Minnesota law.

104.   As a direct and proximate result of Defendants' false statements, misrepresentations, and fraud, Plaintiffs are damaged and continue to be damaged in an amount in excess of $333,000.00.

**Count 6**
**Common Law Fraud – Partnership Withdrawal**
**(All Defendants Except John and Jane Does)**

105.   Plaintiffs incorporate paragraphs 1 through 104 or the Complaint, as if fully rewritten herein.

106.   In June 2006, Defendant Lawton, acting as the President of Crossroad Capital, which in turn is the General Partner for Paramount L.P., issued three checks to Plaintiffs representing their complete Liquidation Proceeds from Paramount L.P.

107.   The check issued to BEA was for $138,357.00; the check issued to the Andersons was for $156,007.00, totaling $294,364.00.

108.   The act of issuing a check constitutes a material representation (that the check is "good" and payable as to the date indicated on the check), a representation intended by the issuer to be relied upon by the check addressee/payee.

109.   Plaintiffs deposited their respective checks in accounts at their respective financial institutions.

110.   By June 30, 2006, all three of these checks had "bounced" for insufficient funds in Paramount L.P.'s account.

111.   Lawton, individually and as President (the controlling person) of the General Partner, Crossroad Capital, Crossroad Capital in its Capacity as General Partner to Paramount L.P., and Paramount L.P., as the record owner of the funds and securities of its limited partners, knew and did not disclose or were reckless in not knowing that Paramount L.P. did not have sufficient funds to pay Plaintiffs' checks.

112.   Defendants' acts constitute fraud under Minnesota law.

113.   As a direct and proximate result of Defendants' fraud, Plaintiffs are damaged and continue to be damaged in an amount in excess of $333,000.00.

**Count 7**
**Common Law Fraud – Account Values Not Represented**
**in Partnership Withdrawal Amounts**
**(All Defendants Except John and Jane Does)**

114.    Plaintiffs incorporate paragraphs 1 through 113 of the Complaint, as if fully rewritten herein.

115.    The Crossfire Partnership Agreement states, "each limited partner may withdraw all or part of its Capital Account…**effective** on the last day of each calendar year…."  (Emphasis added).

116.    Periodically, Defendants issued monthly account statements, including a December 31, 2005, statement.

117.    The representations made by Defendants in the Crossfire Partnership Agreement and Paramount L.P.'s monthly account statements are material, and were intended by Defendants to be justifiably relied upon by people, including Plaintiffs. See DE § 17-407(a).

118.    Plaintiffs justifiably relied upon the representations made in the Crossfire Partnership Agreement as well as the accuracy of their monthly account statements, including their December 31, 2005, statement.  See DE § 17-407(a).

119.    Plaintiffs' Withdrawal Proceeds should have been based on their account values as indicated on their respective account statements for December 31, 2005.

120.    The amounts indicated in Plaintiffs' checks (BEA for $138,357.00, the Andersons' for $156,007.00) are approximately $39,000.00 less than the amounts indicated in Plaintiffs' respective December 31, 2005 account statements (BEA $156,426.22, the Andersons $176,641.62).

121.    There are three possible conclusions.  First, the amounts indicated on Plaintiffs' monthly account statements, including their December 31, 2005 statements are false.  Second, the amounts provided to Plaintiffs in their "bounced" checks are false, or third, both amounts are false.

122.    Defendants knew or were reckless in not knowing that the monthly account statements, including the December 31, 2005 statement, were false.

18

123.  Defendants knew or were reckless in not knowing that the amounts indicated on their "bounced" checks were false.

124.  Defendants knew or were reckless in not knowing that Plaintiffs would justifiable rely upon Defendants' acts and representations.

125.  As a direct and proximate result of Defendants' fraud, Plaintiffs are damaged and continue to be damaged in an amount in excess of $411,000.00.

**Count 8**
**Common Law Fraud – False K-1 Statements**
**(All Defendants Except John and Jane Does)**

126.  Plaintiffs incorporate paragraphs 1 through 125 of the Complaint, as if fully rewritten herein.

127.  Defendants issued K-1 Statements to Plaintiffs for the tax years 2003, 2004, and 2005.

128.  K-1 Statements are material representations intended by those who make them to be relied up to the persons to whom they are sent.  In addition, they are intended to be relied upon by the United States Internal Revenue Service.

129.  The 2005 K-1 Statements received by Plaintiffs all indicate overall profit since Plaintiffs' initial 2003 investments.

130.  Plaintiffs justifiably relied upon these K-1 Statements in preparing their state and federal income tax returns for the 2003, 2004, and 2005 tax years.

131.  The K-1 Statements were false because, on information and belief, they indicated non-existent profits, and, therefore, Plaintiffs knew that Defendants could not meet their obligations.  Defendants knew that Plaintiffs would justifiably rely upon their K-1 Statements and that such reliance would damage Plaintiffs.

132.  As a direct and proximate result of Defendants' fraud, Plaintiffs are damaged and continue to be damaged in an amount in excess of $333,000.00.

**Count 9**
**Securities Fraud in Violation of Section 10(b)**
**of the Securities Exchange Act of 1934 and Rule 10b-5**
**(All Defendants Except the John and Jane Does)**

133.    Plaintiffs incorporate paragraphs 1 through 132 of the Complaint, as if fully rewritten herein.

134.    15 U.S.C. § 78j in pertinent part provides:

> (a) It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –
> (b) To use or employ, in connection with the purchase or sale of any security…any manipulative or deceptive devise…

135.    Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange.
>
> > (a) To employ any device, scheme, or artifice to defraud.
> > (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

136.    The Crossfire Memorandum and the Crossfire Partnership Agreement are offers and sales of securities issued by Defendants, which securities were purchased by Plaintiffs.  Defendants created and

distributed these documents by the use of the mails, telephone, and other means of interstate commerce.

137. The representations made by the Crossfire Memorandum and the Crossfire Partnership Agreement are material and were intended by Defendants to be justifiably relied upon by persons, including Plaintiffs.

138. The Crossfire Memorandum and the Crossfire Partnership Agreement materially misstate facts, contain untrue statements of material fact, and omit to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading. Specifically, the Crossfire Memorandum delineates that Paramount L.P. would engage in active trading using technical analysis and keep a significant portion of Paramount L.P.'s portfolio in cash accounts at the end of each trading day. The Crossfire Memorandum states that Paramount L.P. would provide annual audited Partnership financial statements.

139. These representations and omissions of material facts were intended to induce individuals to purchase securities issued by Paramount L.P.

140. These acts and omissions constitute fraud in the offering and sale of securities.

141. Defendants knew or acted in reckless disregard of the materially misstated facts, created documents that contained untrue statements of material fact, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading. Therefore, Defendants acted with scienter.

142. Plaintiffs justifiably relied on the representations in the Crossfire Memorandum.

143. Defendants' acts and/or omissions, as described above and throughout the Complaint, violate 15 U.S.C. § 78j and Rule 10b-5.

144. As a direct and proximate result of Defendants' violation of 15 U.S.C. § 78j and Rule 10b-5, Plaintiffs are damaged and continue to be damaged in excess of $333,000.00.

**Count 10**
**Control Person Liability under 15 U.S.C. § 78t,**
**Securities Exchange Act of 1934**
**(All Defendants Except Paramount L.P. and John and Jane Does)**

145.    Plaintiffs incorporate paragraphs 1 through 144 of the Complaint, as if fully rewritten herein.

146.    15 U.S.C. § 78t in pertinent part provides:

> (a) Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall be liable jointly and severally with and to the same extent as such controlled person is liable…

147.    Initially Defendant Lawton was a co-owner and manager of Crossroad Capital, the general partner of Paramount L.P.  In his ownership and management positions, he had the right and obligation to control the acts of all employees and agents of Crossroad Capital and Paramount L.P.  In addition, upon information and belief Lawton was, individually, a general partner, with full power and authority over Paramount L.P.

148.    Subsequently, on or about April 30, 2003, Defendant Lawton became the sole owner and manager of Crossroad Capital and Paramount L.P.  In his position, Lawton had the right and obligation to control the acts of all the employees and agents of Crossroad Capital and Paramount L.P.  Upon information and belief, Lawton continues as an individual general partner with full power and authority over Paramount L.P.

149.    Upon leaving a partnership, a former general partner retains liability for their acts and the Partnership's acts, at least for the period while they were general partners or controlling persons.  See DE § 17-403 (6).

150.    Paramount L.P.'s acts and/or omissions, as described throughout the Complaint, violate the federal securities law.  Lawton and Crossroad Capital as a result of their position of control, have control person liability equal to the liability of the underlying conduct of Paramount L.P. pursuant to 15 U.S.C. § 78t.

151.   Plaintiffs are damaged and continue to be damaged in excess of $333,000.00, and, pursuant to 15 U.S.C. § 78t, are entitled to their remedies against these controlling persons.

**Count 11**
**Violation of 15 U.S.C. § 77l (2), Securities Act of 1933**
**(All Defendants Except Paramount L.P. and John and Jane Does)**

152.   Plaintiffs incorporate paragraphs 1 through 151 of the Complaint, as if fully rewritten herein.

153.   15 U.S.C. § 77l in pertinent part provides:

(a) In General.  Any person who –

(1) offers or sells a security in violation of section 5, or
(2) offers or sells a security…by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omissions, shall be liable…to the person purchasing the security from him, **who may sue either at law or in equity**…to recover the consideration paid for such a security with interest thereon…  (emphasis added)

154.   The oral statements made by Defendants were false, misleading, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

155.   The Crossfire Memorandum is a prospectus for the sale of Crossfire limited partnership interests and was intended to induce persons, including Plaintiffs to purchase securities issued by Paramount L.P.

156.   The statements in the Crossfire Memorandum were false, misleading, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

157.   Specifically, the Crossfire Memorandum delineates that Paramount L.P. would engage in active trading using technical analysis and keep a

significant portion of Paramount L.P.'s portfolio in cash accounts at the end of each trading day.   The Crossfire Memorandum states that Paramount L.P. would provide annual audited Partnership financial statements.

158.   Defendants knew, were reckless in not knowing, or in the exercise of reasonable care would have known that the oral statements made, the written statements in the Crossfire Memorandum, and the written statements in the Crossfire Partnership Agreement were false, misleading, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

159.   Plaintiffs justifiably relied on the representations in the Crossfire Memorandum.

160.   Defendants' acts and/or omissions, as described above and throughout the Complaint, violate 15 U.S.C. § 77l(2).

161.   Defendants are liable for the consideration paid with interest thereon.

162.   As a direct and proximate result of Defendants' violation of 15 U.S.C. § 77l(2), Plaintiffs are damaged and continue to be damaged in excess of $411,000.00.

**Count 12**
**Violation of 15 U.S.C. § 77o, Control Person Liability**
**Under the Securities Act of 1933**
**(All Defendants Except Paramount L.P. and**
**John and Jane Does)**

163.   Plaintiffs incorporate paragraphs 1 through 162 of the Complaint, as if fully rewritten herein.

164.   15 U.S.C. § 77o in pertinent part provides:

Every person who, by or through stock ownership, agency, or otherwise or who controls any person liable under section 11, or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable…

165. Initially Defendant Lawton was a co-owner and manager of Crossroad Capital, the general partner of Paramount L.P.  In his ownership and management position, he had the right and obligation to control the acts of all employees and agents of Crossroad Capital and Paramount L.P. In addition, upon information and belief, Lawton was individually, a general partner, with full power and authority over Paramount L.P.

166. Subsequently, on or about April 30, 2003, Defendant Lawton became the sole owner and manager of Crossroad Capital and Paramount L.P. In his position, Lawton had the right and obligation to control the acts of all the employees and agents of Crossroad Capital and Paramount L.P. Lawton continues as an individual general partner with full power and authority over Paramount L.P.

167. Upon leaving a partnership, a former general partner retains liability for their acts and the Partnership's acts, at least for the period while they were general partners or controlling persons.

168. Paramount L.P.'s acts and/or omissions, as described throughout the Complaint, violate the federal securities law.  Lawton and Crossroad Capital as a result of their position of control, have control person liability equal to the liability of the underlying conduct of Paramount L.P., its employees, or agents pursuant to 15 U.S.C. § 78o.

169. Plaintiffs are damaged and continue to be damaged in excess of $333,000.00, and, pursuant to 15 U.S.C. §78o, are entitled to their remedies against these controlling persons.

### Count 13
### Violation of Minnesota Statute Minn. Stat. § 80A.01
### To all Defendants except the John and Jane Does)

170. Plaintiffs incorporated paragraphs 1 through 169 of the Complaint, as if fully rewritten herein.

171. Minn. Stat. § 80A.01 in pertinent part provides:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

> (a) to employ any devise, or scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state material facts necessary in order to make the statement, in light of the circumstances under which they are made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

172. Defendants' acts and/or omissions, as described throughout the Complaint and in Counts 9, 10, 11, 12, and 13 violate Minn. Stat. § 80A.01.

173. As a direct and proximate result of Defendants' violation of Minn. Stat. § 80A.01, Plaintiffs are damaged and continue to be damaged in excess of $333,000.00.

## Count 14
## Violation of Minn. Stat. § 80A.03
## (To all Defendants Except the John and Jane Does)

174. Plaintiffs incorporate paragraphs 1 through 173 of the Complaint, as if fully rewritten herein.

175. Minn. Stat. § 80A.03 in pertinent part provides:

It is unlawful for any person to effect any transaction in, or to introduce the purchase or sale of any security by means of any manipulative, deceptive or other fraudulent device or contrivance…

176. Defendants' acts and/or omissions, as described throughout the Complaint, and in Counts 9, 10, 11, 12, and 13 violate Minn. Stat. § 80A.03.

177. As a direct and proximate result of Defendants' violation of Minn. Stat. § 80A.03, Plaintiffs are damaged and continue to be damaged in excess of $333,000.00.

## Count 15
## Violation of Minn. Stat. § 80A.23
## (To all Defendants Including John and Jane Does 3-10 Excluding John and Jane Does 1 & 2)

178.   Plaintiffs incorporate paragraphs 1 through 177 of the Complaint, as if fully rewritten herein.

179.   Minn. Stat. § 80A.23 in pertinent part provides:

> **Subd. 2. Sales and purchases.**   Any persons who violates section in connection with the purchase or sale of any security shall be liable to any person damaged thereby who sold such security to that person…Damages in an action pursuant to this subdivision shall include the actual damages sustained plus interest from the date of payment of sale, costs, and reasonable attorney's fees.

> **Subd. 3. Joint and several liability of others.**   Every person who directly or indirectly controls a person liable under subdivision 1 or 2,…every employee of such a person who materially aids in the act or transaction constituting the violation…are also liable jointly and severally with and to the same extent as such person.

180.   Defendants' acts and/or omissions, as described throughout the Complaint, and in Counts 9, 10, 11, 12, and 13 violate Minn. Stat. § 80A.23.   To the extent John and Jane Does Number 3-10 represent either:

1. Unknown indirect control persons; or

2. Employees or agents who materially aided in the acts and transactions, such persons when identified shall be liable jointly and severally with the same extent as the person who is the direct violator.

Then, John and Jane Does Number 3-10 are liable jointly and severally with and to the same extent as Paramount L.P.

181.   As a direct and proximate result of Defendants' violation of Minn. Stat. § 80A.23, Plaintiffs are damaged and continue to be damaged in excess of $333,000.00.   Plaintiffs are entitled to recover their actual damages sustained, plus interest from the date of payment of sale, costs, and reasonable attorneys' fees.

**Count 16**
**Violations of Minn. Stat. §§ 609.535 and 604.113**
**(To all Defendants Except the John and Jane Does)**

182.   Plaintiffs incorporate paragraphs 1 through 181 of the Complaint, as if fully rewritten herein.

183.   Minn. Stat. § 604.113 provides in pertinent part:

> **Subd. 2. Acts constituting.**   Whoever issues any check that is dishonored is liable for the following penalties:

> (a)  A service charge, not to exceed $30.00, may be imposed immediately on any dishonored check by the payee…

> (b)  If the amount of the dishonored check is not paid within 30 days after the payee or holder has mailed notice of dishonor pursuant to section 609.535 and a description of penalties contained in this subdivision, whoever issued the dishonored check is liable to the payee or holder of the check for:

>> (1) the amount of the check, the service charge as provided in paragraph (a) [which will be $30.00 per check], plus a civil penalty of up to $100.00 or the value of the check, whichever is greater.

>> (2) Interest at the rate provided on judgments pursuant to section 549.09 on the face amount of the check from the date of dishonor; and

>> (3) Reasonable attorneys fees if the aggregate amount of dishonored checks issued by the issuer to all payees within a six-month period is over $1,250.00.

184.   Notice pursuant to Minn. Stat. §§ 604.113 and 609.535 was sent to Paramount L.P., c/o Lawton on September 20, 2006.

185.   Minn. Stat. § 609.535 in pertinent part provides:

**Subd. 2 Acts Constituting.**  Whoever issues a check which, at the time of issuance, the issuer intends shall not be paid, is guilty of issuing a dishonored check…

**Subd. 2a. Penalties.**  (a) A person who is convicted of issuing a dishonored check under subdivision 2 may be sentenced as follows:

(1) to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both, if the value od the dishonored chech, or checks aggregated under paragraph (b), is more than $500;

**Subd. 3. Proof of Intent.**  Any of the following is evidence sufficient to sustain a finding that the person at the time the person issued the check intended it not to be paid:

(1) proof that, at the time of issuance, the issuer did not have an account with the drawee;
(2) proof that, at the time of issuance, the issuer did not have sufficient funds or credit with the drawee and that the issuer failed to pay the check within five business days after mailing notice of nonpayment or dishonor…

(3) proof that, when presentment was made within a reasonable time, the issuer did not have sufficient funds or credit with the drawee and that the issuer failed to pay the check within five business days after mailing of notice of nonpayment or dishonor as provided in this subdivision.

186.   Defendants issued two checks to Plaintiffs for $138,357.00 and $156,007.00, both of which bounced for insufficient funds.  Plaintiffs subsequently mailed notice of non-payment through counsel.  Plaintiffs have made multiple demands on Defendants for these checks to be honored, which demands were ignored by Defendants.

187.   As a direct and proximate result of Defendants' acts of issuing checks to Plaintiffs, which checks subsequently "bounced", have damaged and continue to damage Plaintiffs in excess of $333,000.00.

**Count 17**
**Violation of Section 17-305**
**Delaware Revised Uniform Limited Partnership Act**
**(To All Defendants Except John and Jane Does)**

188.   Paragraphs 1 through 187 of the Complaint are incorporated herein as if fully rewritten.

189.   Plaintiffs and Defendants agreed in the Crossfire Partnership Agreement that any dispute regarding the partnership agreement should be litigated in the State of Minnesota following Delaware law.

190.   Plaintiffs and their counsel both orally and in writing requested that Defendants furnish access to information regarding the status of business and financial condition of the limited partnership.  Plaintiffs indicated their purpose was to evaluate the financial condition of Paramount L.P. and to attempt to understand why the checks issued by Paramount L.P. to Plaintiffs "bounced".

191.   Defendants provided no such information.

192.   Defendants failed to provide the information required by Section 12.3 of the Crossfire Partnership Agreement.

193.   Defendants' denial of relevant information to Plaintiffs cannot be compensated by money damages.

194.   As a direct and proximate result of the Defendants violation of DE § 17-305 and the Crossfire Partnership Agreement, Plaintiffs are entitled to the equitable relief of immediate receipt of partnership financial statements, and similar business records, necessary to determine the health of the partnership.

**Count 18**
**Punitive Damages**
**(To all Defendants Except the John and Jane Does)**

195.   Paragraphs 1 through 194 of the Complaint are incorporated herein as if fully rewritten.

196. Defendants' repeated acts and/or omissions, described throughout the Complaint, are grossly negligent, reckless, intentional, and/or conducted with knowledge of their harmful effects towards Plaintiffs.

197. Defendants' acts and/or omissions, described throughout the Complaint, were done knowingly, intentionally, and/or with an intentional disregard to the facts that created a high probability of injury to Plaintiffs' financial condition and rights under law.

198. Defendants' acts and/or omissions, described throughout the Complaint, were undertaken with deliberate indifference to the high probability of injury to Plaintiffs' rights.

199. Defendants' acts and/or omissions, described throughout the Complaint, were outrageous were undertaken with evil motive or reckless indifference to Plaintiffs' rights.

200. Defendants' acts and/or omissions, described throughout the Complaint, were willful and wanton and demonstrated a conscience awareness and/or conscience indifference that their acts injured Plaintiffs.

201. Defendants' acts and/or omissions were done with scienter.

202. Defendants' acts and/or omissions constitute breach of fiduciary duties, malice, fraud, and/or oppression.

203. This punitive damages count is only for federal securities law and/or Delaware law claims.  Any potential punitive claim pursuant to, or otherwise governed by Minnesota law, will be made in accordance to Minn. Stat. § 549.191.

204. These acts entitle Plaintiffs to punitive damages, in an amount established at trial, estimated to be in excess of $1,500,000.00.

WHEREFORE, Plaintiffs Business and Estate Advisers, Inc., PSP, E. Dennis Zahrbock, Trustee, John Anderson, and Jodene Anderson demand the following:

(1) Compensatory damages in the amount of Plaintiffs' initial investments as well as all earnings Paramount L.P. indicated Plaintiffs earned, which amount is in excess of $333,000.00;

(2) Interest at the statutory rate from the day Plaintiffs' Paramount L.P. partnership distribution checks bounced;

(3)     In the event that Paramount's earnings were false, or that the offer of
        interests of Paramount Partners L.P. was in violation of the state or
        federal securities laws, then statutory interest from the day of Plaintiffs'
        specific investments in Paramount L.P.;

(4)     Pursuant to § 15 U.S.C. 77o, recession of Plaintiffs' purchase of
        securities;

(5)     In the event that Paramount L.P. does not have the assets to pay
        Plaintiffs their partnership Withdrawal Proceeds, then an order requiring
        all partners who received any distributions in 2006 to deposit such funds
        to this Court, to be held in escrow, for later distribution as set forth in
        the Crossfire Partnership Agreement, following appropriate notice and
        proceedings;

(6)     Punitive damages with respect to all federal securities law claims and
        any claim governed by Delaware law, in an amount to be determined at
        trial, estimated in excess of $1,500,000.00;

(7)     Reasonable attorneys fees and costs; and

(8)     All other legal and equitable relief that this Court deems appropriate.

Respectfully submitted,

Dated:  January 10, 2007          ___/s/ Jeffrey D. Gram___
                                  Jeffrey D. Gram (#0336609)
                                  Jeremy P. Greenhouse (#0328443)
                                  GREENHOUSE & GRAM LLC
                                  8120 Penn Avenue South, Suite 360
                                  Bloomington, Minnesota 55431-1369
                                  Phone:(952) 767-5544
                                  Fax:   (952) 767-5546
                                  Email:jgram@greenhousegram.com

                                  And

                                  Of Counsel
                                  _____
                                  Joseph D. Carney (#0010886)
                                  Brian T. McElroy, Of Counsel (#0073930)
                                  JOSEPH D. CARNEY & ASSOCIATES, L.L.C.
                                  2001 Crocker Road
                                  440 Gemini Tower II
                                  Westlake, Ohio  44145-6968
                                  (440) 899-1551 (phone)
                                  (440) 892-4147 (facsimile)
                                  Email: jdc@jdcarney.com
                                  Email: btm@jdcarney.com

                                  Attorneys for Plaintiffs Business and Estate
                                  Advisers, Inc., PSP, E. Dennis Zahrbock,
                                  Trustee, John Anderson, and Jodene Anderson

A Jury by the maximum number of jurors allowed by law is hereby demanded.

      ___/s/ Jeffrey D. Gram___
One of the Attorneys for Plaintiffs Business
and Estate Advisers, Inc., PSP, E. Dennis Zahrbock,
Trustee, John Anderson, and Jodene Anderson